UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAUL M. KAUFMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07 C 1707 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| AMERICAN EXPRESS TRAVEL ) | |
| RELATED SERVICES COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

The defendant, American Express Travel Related Services Company, Inc. ("American Express"), has filed a notice of removal from state court and a motion to compel arbitration and stay proceedings pending arbitration. For the reasons stated below, the court finds that it has subject matter jurisdiction over this case and denies the motion to compel arbitration.

**I. BACKGROUND**

Plaintiff, Saul M. Kaufman ("Kaufman"), filed a putative class action lawsuit against American Express in the Circuit Court of Cook County on February 14, 2007. He alleged breach of contract, unjust enrichment, and statutory fraud. American Express filed a notice of removal to federal court on March 27, 2007, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"). On May 1, 2007, American Express filed this motion to compel arbitration and stay proceedings.

All claims in this case stem from Kaufman's purchase, on October 27, 2006, of an "American Express Gift Card" ("Gift Card"), valued at $50, from a CVS/pharmacy store in

1

Niles, Illinois. Kaufman alleges[1] that the packaging of the Gift Card stated that: (1) the Gift Card could be used "all over the place"; (2) the Gift Card had no value until purchased and validated; (3) the Gift Card could be used only in the United States; and (4) the "enclosed American Express Gift Card Cardholder Agreement includes information for the recipient." Compl. ¶ 38, *id.* Ex. 1.

When he opened the card, Kaufman alleges that he read a one-page insert (the "Insert") containing disclaimers that did not appear on the outside of the package. *Id.* ¶ 42. The Insert read:

> **Important information about your Card:**
> • Your card is welcomed at retail establishments and restaurants in the U.S. that accept the American Express® Card.
> • This Card is not for use at airline, hotel, car rental, telecom, gasoline merchants, or ATMs. Additional restrictions apply.
> • Please use your Card soon! A monthly Service Fee is waived for the first 12 months after purchase.* Please see Terms and Conditions.
> *Subject to applicable law.

*Id.* Ex. 2 (emphasis in original).

Kaufman used the Gift Card for the first time on November 11, 2006, spending $22.11, and again on November 12, 2006, spending $14.59. *Id.* ¶¶ 45-46. He alleges he was unable to use the card again to spend down the remaining $13.30 because of restrictions on "split tender" transactions in which a retailer accepts cash for a balance on a purchase when the Gift Card available balance is insufficient. *Id.* ¶¶ 47-54. Kaufman alleges that he learned of the restrictions only when he read the six-page leaflet also included with the Gift Card that was entitled "Using the American Express® Gift Card," which included the "American Express®

---

[1]The background facts are taken from Kaufman's Complaint and are assumed to be true for purposes of this motion only.

Gift Card Cardholder Agreement" ("Agreement").  *Id.* ¶ 51, *id.* Ex. 3.  The Agreement, which is five-pages of approximately six-point narrow typeface, includes disclosures that: (1) value cannot be added to the Gift Card; (2) American Express charges $5.95 for a replacement card, $10.00 to issue a check refunding available funds on the Gift Card after its expiration date, and $2 per month in "service fees" from any balance remaining twelve months from issuance (where allowed by law); and (3) retailers have discretion to accept a "split tender."  *See id.* Ex. 3.  Of relevance to this motion, at the very end, the Agreement contain a broad arbitration provision and a choice of law clause specifying New York law.  *See id.* Ex. 3 at 5-6.  The arbitration provision provides in part:

> As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Gift Card or this Agreement as well as any related or prior agreement that you may have had with us or the relationships resulting from this Agreement, including the validity, enforceability or scope of this Arbitration Provision or the Agreement. . . .
>
> The term "Claim" is to be given the broadest possible meaning that will be enforced . . . .
>
> Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed (the "Code"). . . .

*See id.* Ex. 3.[2]

## II. ANALYSIS

### A. Petition for Removal

On March 27, 2007, American Express filed a notice of removal based on CAFA.

---

[2] American Express reproduces the arbitration provision in its brief; in standard-size font it runs for 1.5 pages, single-spaced.

Kaufman filed no objection to removal and no motion to remand within the time period allowed. *See* 28 U.S.C. § 1447(c) (requiring plaintiff to move to remand within thirty days of the notice of removal). Nevertheless, "the court has an independent duty to satisfy itself that it has subject-matter jurisdiction." *See Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994). Removal is proper only where the federal court would have had original jurisdiction over the case. 28 U.S.C. § 1441. As the party seeking to invoke federal jurisdiction, American Express bears the burden of demonstrating that CAFA requirements are met. *See, e.g.*, *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). To do so, American Express must offer evidence which proves to a reasonable probability that jurisdiction exists. *Id.*

American Express's Notice of Removal alleged the following relevant facts.[3] American Express filed a signed notice of removal to federal court along with a copy of the pleadings and summons on March 27, 2007, thus satisfying the notice requirements of 28 U.S.C. § 1446(a). It filed the notice of removal within thirty days of receipt of the initial pleading, which was on February 28, 2007, 2007, thus satisfying the timeliness requirements of § 1446(b). CAFA provides for original jurisdiction "in any civil action in which the matter in controversy exceeds . . . $5,000,000 . . . and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant." *Id.* § 1332(d)(2). Kaufman filed the suit "on behalf of others similarly situated" and the complaint contains class allegations; therefore, it is a class action. American Express is a citizen of New York, being incorporated and having its principal

---

[3]As Kaufman has not filed an objection to the petition for removal, the court will accept the facts given by American Express as true.

place of business there, and Kaufman is a citizen of Illinois; therefore, the diversity requirements are satisfied. Finally, American Express alleges that the amount in controversy is more than $5 million and provides an affidavit from Russell W. Yergenson, Vice President of Finance for American Express, in support. CAFA authorizes the aggregation of class members' claims to satisfy the minimum amount in controversy. *Id.* § 1332(d)(6). Yergenson avers that during the relevant period, American Express's national revenue from the purchase fees on the Gift Cards totaled more than $5 million, as did the monthly service fees collected. None of the mandatory bases for declining jurisdiction are apparent. *See id.* § 1332(d)(4). Therefore, the court finds that American Express has established that federal jurisdiction under CAFA is proper. As the court has subject matter jurisdiction, it can proceed to the merits of the motion to compel arbitration.

**B.    Did The Parties Agree To Be Bound By The Agreement?**

American Express argues that the contract between the parties includes all of the terms and conditions stated on the Insert and the Agreement as well as the Gift Card package exterior. Therefore, according to American Express, the contract includes the choice of law provision and the arbitration agreement and the court should enforce both. Kaufman argues that he agreed only to those terms he knew of at the time he purchased the Gift Card, namely those on the outside of the package, and that American Express is attempting unilaterally to add new, material terms to the contract (including the arbitration agreement and the choice of law provision) and the court should not enforce them.

The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

5

revocation of any contract." 9 U.S.C. § 2. Here, the parties do not seem to dispute that, if valid, the claims fall within the scope of the arbitration provision. However, the court must first address a threshold issue: whether the arbitration provision is valid. The validity issue itself has two prongs, namely whether the parties entered into a contract that contained an arbitration provision, and if so, whether the provision is enforceable.

        1.      <u>Does Illinois or New York State Law Apply To The Threshold Question?</u>

To answer the question of whether and under what terms a contract was formed, the court turns to state law. The parties dispute whether Illinois or New York law applies. Kaufman argues that Illinois law applies under Illinois choice-of-law provisions. American Express argues that Illinois choice-of-law tests are irrelevant because the Agreement contains a valid New York choice-of-law provision and there is no reason for the court not to enforce it.

The law is clear that, *where a valid contract has been formed*, a court should enforce the choice of law provision contained within that contract unless it violates the forum state's public policy and the forum state has a materially greater interest in the litigation than the chosen state. *See, e.g.*, *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1413 (N.D. Ill. 1996) (following § 187 of the Restatement (Second) of Conflict of laws where "as here, the parties to a contract have included an express choice of law provision in their contract"). However, the threshold question is whether the parties entered into a valid contract containing a choice of law provision. *See, e.g.*, *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 917-18 (N.D. Ill. 2003) (finding that a contract between the parties was valid before applying Illinois choice-of-law rules to respect the choice of law provision in the contract). American Express argues that the choice-of-law provision is "indisputedly [sic]. . . a term of the parties' contract." However, as an

6

antecedent matter, the court must determine whether the parties have a valid contract, and, before it can do that, it must decide which state's law applies to the issue of contract formation. Only if the court finds a valid contract may it turn to the choice of law provision in the Agreement in order to determine the validity of the arbitration provision.

The case was removed pursuant to CAFA, which is part of the diversity jurisdiction statute. 28 U.S.C. § 1332. A district court applies the choice of law rules of the state in which it sits in a diversity case. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *see Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 572 (7th Cir. 1995webm) (applying the choice of law rules of Illinois, the forum state, in a contract case). Therefore, the court agrees with Kaufman that it should follow the choice-of-law rules of Illinois, the forum state, to determine which state law applies to the issue of contract formation.

Illinois follows the "most significant relationship test" for deciding among conflicting laws. *See Purcell & Wardrope Chartered v. Hertz Corp.*, 530 N.E.2d 994, 1001 (Ill. App. 1988). "The factors to be considered in determining which state has the most significant relationship to a contract claim are: the place of negotiation, the place of execution or contracting, the place of performance, the location of the subject matter of the contract, the domicile, residence, place of incorporation, and the business of the parties." *Id.* at 1001. As Kaufman argues, four of the five criteria favor Illinois because the contract was formed, negotiated, and performed when Kaufman purchased the Gift Card at the CVS/pharmacy store in Illinois and the subject matter of the contract is the Gift Card itself, which was purchased and used in Illinois. The last factor, domicile and residence, is split between Illinois and New York. Therefore, the balance of factors

strongly weigh in favor of applying Illinois law to the issue of contract formation.[4]

   2.   Did The Parties Form An Enforceable Contract?[5]

The parties do not dispute that they have a contract. However, they do dispute the point at which the contract was finalized and the content of that contract. Kaufman argues that the contract between the parties consists solely of the terms on the outside of the Gift Card package at the time he bought the Gift Card.[6] American Express counters that because Kaufman used the card after he had an opportunity to inspect the Agreement he should be bound by the Agreement.[7]

---

   [4]Of course, if the court determines that a valid contract including the choice-of-law provision exists, then New York law will apply to subsequent analysis.

   [5]American Express argues that Kaufman bears the burden of demonstrating why the arbitration agreement should not bind the parties. This is true *where a valid agreement to arbitrate exists* and a party is trying to establish a policy reason for non-enforcement of the arbitration provision. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987) ("The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."). However, as previously explained, the issue here is whether a contract exists. Under Illinois law, the burden of proof typically rests on the party attempting to enforce a contract that has been placed in issue. *See, e.g.*, *Cardinal v. Trendel*, 300 N.E.2d 612, 616 (Ill. App. 1973) (noting that the burden of proving the terms of the contract rests on the party attempting to enforce it, typically the plaintiff).

   [6]The court notes that CVS/pharmacy, not American Express, actually accepted Kaufman's payment.

   [7]American Express's argument that Kaufman implicitly acknowledges the Agreement is binding by alleging a breach of contract claim is unpersuasive. Kaufman is not arguing that there is *no* contract between the parties; it is clear in the complaint that he is disputing that the contract includes the terms in the Agreement. Similarly unpersuasive is American Express's argument that Exhibit 3 controls over inconsistent allegations in the complaint. It is true that § 2-606 of the Illinois Code of Civil Procedure requires the written instrument at issue to be attached to the complaint and that, in the case of a conflict, "the exhibits control." *See Bajwa v. Metropolitan Life Ins. Co.*, 804 N.E.2d 519, 531 (Ill. 2004). But, the law more specifically instructs that "[w]hen the exhibit is not an instrument upon which the claim . . . is founded, but, rather, is merely evidence supporting the pleader's allegations, the rule that the exhibit controls

Under Illinois law, the basic elements of a contract are "competent parties, valid subject matter, legal consideration, mutuality of obligation and mutuality of agreement." *Harris v. Johnson*, 588 N.E.2d 1326, 1329 (Ill. App. 1991). Kaufman essentially challenges the mutuality of the contract. He argues that he "irrevocably" paid for the Gift Card without having an opportunity to inspect the Insert or Agreement. Therefore, Kaufman's argument goes, American Express unilaterally added the Agreement after the contract had been finalized and, like a counteroffer that comes after acceptance, it is not part of the parties' contract. American Express argues that *ProCD v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996), and *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), are dispositive because Kaufman had an opportunity to inspect the Agreement before he used the card. Kaufman distinguishes his case from *ProCD* and *Hill* because he alleges, unlike the plaintiffs in those cases, he was unable to reject the additional terms and return the Gift Card.

In *ProCD* and *Hill*, the Seventh Circuit addressed the issue of whether terms that were unknown at the point of sale, including agreements to arbitrate, were part of contracts. In *ProCD*, the court held that contract terms shrinkwrapped inside a software box were binding on consumers, unless they were objectionable on general contract grounds. *ProCD*, 86 F.3d at 1449. The court concluded that the contract was formed *after* the customer had a chance to inspect both the product and the terms shrinkwrapped inside the box, not at the time of purchase. *Id.* at 1452. The court discussed three main factual considerations that justified this conclusion.

---

over conflicting averments in the pleading is inapplicable." *Id.* at 531-32. Here, Kaufman alleges that the contract is based on pre-sale disclosures, not the Agreement, and that the Agreement is a means by which American Express commits statutory fraud. *See, e.g.*, Compl. ¶¶ 64, 68, 77. Therefore, Exhibit 3 is not intended as the instrument upon which the contract claim is founded; it is merely illustrative.

9

First, the box disclosed that the software was subject to license restrictions, so the purchaser had notice of additional terms within. *Id.* at 1450. Second, the license was printed in a booklet and also appeared on the computer screen every time the software ran so that the user had to affirmatively accept the license to proceed. *Id.*; *id.* at 1452. And third, the license expressly extended the right to return the product if the terms were unacceptable, so the purchaser could reject the contract if he desired. *Id.* at 1451.

In *Hill*, the court extended this reasoning to consumers who purchased computers sight unseen. *Hill*, 105 F.3d at 1148. A customer placed an order for a computer by phone and it arrived with a list of terms "said to govern unless the customer return[ed] the computer within 30 days." *Id.* The court reasoned that "[i]f [the terms inside the box] constitute the parties' contract because the [plaintiffs] had an opportunity to return the computer after reading them, then all [terms] must be enforced." *Id.* Thus, as in *ProCD*, an opportunity to inspect and the right to return were predicates to finding that the contract included the additional terms contained within the box. In *Hill*, the court reasoned that the lack of notice on the *outside* of the box of additional terms *inside* the box was not dispositive because the box was merely a shipping carton, which was "not on display anywhere," and was not intended to inform the customer of anything. *Id.* at 1150. It distinguished mere shipping containers from packages on shelves because "[c]onsumers browsing the aisles of a store can look at the box, and if they are unwilling to deal with the prospect of additional terms can leave the box alone, avoiding the transactions costs of returning the package after reviewing its contents." *Id.*

      a.    <u>Notice</u>

The Gift Card package has printed on the back: "The enclosed American Express Gift

Card Cardholder Agreement includes information for the recipient." Kaufman argues that the term "information" is ambiguous and inadequate to alert a purchaser to restrictive contract terms contained within and that a purchaser is not necessarily the "recipient." American Express argues that the notice provided was legally sufficient. Because the Gift Cards were on display they are, for purposes of analysis of notice requirements, more like the box containing the software in *ProCD* than the shipping box containing the computer in *Hill*. Thus, in order for additional terms to be considered part of a contract, the purchaser must be provided clear notice on the outside of the packaging that additional terms are included inside. *ProCD*, 86 F.3d at 1450.

The outside of the Gift Card package informs the purchaser of additional "information" contained in the Agreement. Inside the package is a one-page Insert, which Kaufman admits he read.[8] It instructs readers to "see Terms and Conditions," a term likely to be afforded more weight than "information" by the average consumer. It is unclear why two different terms are used for the same document, especially when the Gift Card package contains no document actually entitled "Terms and Conditions." The "American Express® Gift Card Cardholder Agreement," referred to on the outside of the package, is not easy to find either. The actual booklet is called "Using the American Express® Gift Card." *See* Compl. Ex. 3. The Agreement begins half-way down page two, after a page and a half of "information" about how to use the Gift Card. Although the problems identified may be mere editorial and design oversights on American Express's part, the court believes they are crucial to the issue of notice. Such "design"

---

[8]The existence of additional "notice" on the inside of a package is irrelevant to the court's analysis under *ProCD* and *Hill*. These cases require notice *prior* to purchase for goods on display.

elements are not inconsequential, as is clear by the proliferation of legislation on gift cards that mandate certain font sizes and locations for expiration dates and fees.[9] In light of the inconsistency of terms and relative obfuscation of documentation, the court questions whether *effective* notice was provided to Kaufman, notwithstanding American Express's *facial* compliance with notice requirements.

    b.  Acceptance

American Express argues that Kaufman accepted the Agreement in the manner it proposed, namely by using the Gift Card. "A vendor, as master of the offer, may invite acceptance by conduct . . . . A buyer may accept by performing the acts the vendor proposes to treat as acceptance." *ProCD*, 86 F.3d at 1452. Courts have held that a consumer accepts terms, read or not, upon using a product, but only where an opportunity to avoid the undesirable terms exists. *See, e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991) (finding forum selection terms enforceable where the consumer had notice of them before using the tickets and "retained the option of rejecting the contract with impunity" before the cruise set sail).

It is undisputed that Kaufman used the Gift Card. This form of acceptance is less overt than that in *ProCD*, where the software user had to click a radio-button that said "accept" before he could proceed to use the product. Intent to accept would be clearer if the Gift Card or packaging had alerted the holder to the fact that use of the card constituted acceptance of the Agreement or if Kaufman had to call a 1-800 number and press one to acknowledge his

---

[9] *E.g.*, 815 Ill. Comp. Stat. 505/2SS (effective January 1, 2008) (requiring fees and expiration date information to be "on the front or back of the gift certificate [or gift card] in a location where it is visible to any purchaser prior to the purchase"); *see also* Ark. Code Ann. § 4-88-703(c) (2007) (requiring gift cards to disclose "in at least 10-point type" the expiration date and any fee information).

acceptance. Nevertheless, it is undisputed that American Express proposed an act that constituted acceptance and Kaufman performed that act. However, for the reasons that follow, the court does not conclude from these facts that Kaufman accepted the Agreement because he did not have a meaningful opportunity to reject it.

    c.    Opportunity to Return[10]

Kaufman argues that he "irrevocably" purchased the Gift Card and was unable to return it. He contends that he could not return the Gift Card without paying a $10.00 fee to refund the available balance and forfeiting the $4.95 fee he paid to CVS/pharmacy. American Express counters that he did not even try to return the card. "[T]he opportunity to return goods can be important" in cases such as this where a party accepts goods, and thus forms a contract, only after an opportunity to inspect. *See ProCD*, 86 F.3d at 1453 (discussing § 2-606 of the Uniform Commercial Code as applicable to shrinkwrap contracts); *accord Schafer v. AT & T Wireless Servs., Inc.*, 04-4149, 2005 WL 850459, *4 (S.D. Ill. Apr. 1, 2005) (noting that courts have found consumers bound by agreements under factual scenarios "premised on the consumer having the opportunity to return the product in order to avoid any term or condition that he found

---

[10] The court is aware of at least three recent cases also dealing with the arbitration provisions in gift cards issued by American Express, namely *Lee v. Am. Express Travel Related Servs.*, 07-04765, 2007 WL 4287557, (N.D. Cal. Dec. 6, 2007); *Pleasants v. Am. Express Co.*, 06-CV-1516, 2007 WL 2407010 (E.D. Mo. Aug. 17, 2007) and *Doerhoff v. General Growth Props., Inc.*, 06-04088-CV, 2006 WL 3210502 (W.D. Mo. Nov. 6, 2006). In *Lee*, the court dismissed for lack of standing. 2007 WL 4287557, *5. In *Pleasants*, the court upheld the arbitration provision. 2007 WL 2407010, *5. In *Doerhoff*, the court found that the cardholder had agreed to the additional terms, but refused to enforce the arbitration provision because it contained a class action waiver which the court found to be unconscionable under Missouri law. 2006 WL 3210502, *7. In none of these cases was the issue of the opportunity to return the card meaningfully addressed. *But see Pleasants*, 2007 WL 2407010, *3 (noting without analysis that the cardholder, who received the card as an incentive gift at no cost to her, "could have returned or destroyed the cards").

to be unacceptable" and holding a wireless customer to an agreement where the box alerted her to additional terms and conditions within and to the fact that use of the phone constituted acceptance of those terms).

American Express does not dispute that Kaufman would have lost money if he had returned the card. It merely argues that it is "undisputed that American Express directly grants refund requests," as does CVS/pharmacy. Def.'s Reply Mem. at 3. American Express provides an affidavit from Patricia W. Stickley, the Manager of Product Design in Gifting at American Express ("Stickley"), to support this argument. However, Stickley admits that "American Express has a *general policy of not accepting returns or refunds* of the Gift Cards," although it sometimes does process them on a "case-by-case basis," after confirming that there is no fraud present. Stickley Aff. ¶ 4 (emphasis added). Stickley further states that "merchants, including CVS/pharmacy, can and do directly grant refund requests received from customers who purchased the Gift Card, *if the circumstances warrant*," and that the merchant can get the refund back from American Express "where the *merchant establishes to American Express's satisfaction that there is a good cause to permit a refund* . . . and where it also appears there is no fraud or money-laundering risk . . . ." *Id.* at ¶ 5 (emphasis added). Notably, Stickley does not say that disagreement with the Agreement would provide a basis for return. Nor does the Agreement; it is silent about a cardholder's options should he reject the terms contained in the Agreement.[11]

In both *ProCD* and *Hill*, the Seventh Circuit discussed the importance of a clear written

---

[11]The only information on obtaining a refund is in regard to refunding available funds after the card has expired (for which American Express charges a fee).

14

"opt out" statement that advised the consumer to return the product if he or she did not agree to the terms. *See Hill*, 105 F.3d at 1148; *ProCD*, 86 F.3d at 1451. Yet American Express asserts that Kaufman should have intuitively known that he could obtain a refund and that he is bound by the Agreement because he did not try. The court disagrees. In *ProCD* and *Hill*, the goods at issue were computer products that the consumer could be expected to use for an extended period. A Gift Card is not a tangible good, it is more like foreign currency purchased not for its own sake but to enable the holder to purchase something else. In both *Hill* and *ProCD*, the Seventh Circuit emphasized the importance of notice of the opportunity to return the goods if the consumer rejected the terms within. Explicit notice of the opportunity to reject additional terms and return a product such as a Gift Card is particularly important because a consumer is less likely to be aware of an opportunity to return the product, for any reason, due to its similarity to currency and its transient nature.

American Express provided no information on how to obtain a refund (or that a cardholder can do so without cost), provided no suggestion that returns are allowed if a consumer rejects the Agreement, enclosed documentation that suggests a charge for returning a Gift Card, and admits to numerous discretionary hurdles to obtaining a refund. Thus, it is far from clear that Kaufman had a meaningful opportunity to return the Gift Card and avoid the contract if desired. The court declines to shift the burden to the consumer to figure out whether he may return a Gift Card and obtain a refund in the absence of a single sentence in the Agreement informing him that this was even an option.[12]

---

[12]Lack of information on how to pursue a return is particularly troubling here, where in many cases (although not in Kaufman's) the purchaser may not be the same person as the cardholder, and the retailer that sold the Gift Card may be unknown.

The court concludes that, notwithstanding Kaufman's use of the Gift Card, the Agreement terms are not enforceable because Kaufman was not presented with any indication that there might be an opportunity to cancel the contract by returning the card once the Agreement's terms were made known to him. Therefore, the contract between the parties was formed at the point-of-sale and does not include the arbitration agreement or the choice-of-law provision. It is therefore not necessary to address the enforceability of the arbitration agreement in this case.

### III. CONCLUSION

For the reasons stated above, American Express's motion to compel arbitration and stay proceedings is denied. American Express shall answer or otherwise plead within 20 days.

ENTER:

\_\_\_\_/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 7, 2008