UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SAUL M. KAUFMAN and KIMBERLY STEIGH, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Case No. 07 C 1707 |
| v. | ) ) | Judge Joan B. Gottschall |
| AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs (the "*Kaufman*" plaintiffs) brought this class action against defendant American Express Travel Related Services Company, Inc. ("American Express"), challenging certain fees assessed on American Express-issued gift cards. This matter is presently before the court on Plaintiffs' Amended Motion for Preliminary Approval of Class Action Settlement and Notice to the Settlement Class (the "Motion"). American Express submitted briefing in support of the Motion.

There are four parallel actions pending in other jurisdictions, each filed after the case before this court: *Kazemi, et al. v. Westfield America, Inc.*, San Diego Superior Court, Case No. 37-2008-00075526-CU-BT-CTL (the "*Kazemi*" action); *Goodman v. American Express Travel Related Services Company, Inc.*, United States District Court for the Eastern District of New York, No. 08-CV-2299 (the "*Goodman*" action); *Jarratt v. American Express Company*, Superior Court of the State of California for the County of San Diego, Case No. 37-2009-00082117-CU-BT-CTL (the "*Jarratt*" action); and *Rudd v. American Express Travel Related Services Co., Inc.*, pending in the United States

District Court for the Southern District of California, Case No. 09-CV-930-WQH (RBB) (the "*Rudd*" action).  While the *Jarratt* and *Rudd* plaintiffs have signed the proposed settlement agreement, the *Goodman* and *Kazemi* plaintiffs have each submitted objections to the Motion.

The court addresses the issues in the Motion and the objections thereto in turn.

## I. BACKGROUND

In their Amended Class Action Complaint, the *Kaufman* plaintiffs seek damages arising from American Express' alleged misrepresentations regarding the value of "The American Express Gift Card" (the "Gift Card").  Specifically, the *Kaufman* plaintiffs allege that American Express falsely represents that the Gift Cards are worth a certain value; can be used "all over the place;" and can be used in combination with another form of payment (in a so called "split-tender" transaction).  Each of these representations are false, according to the *Kaufman* plaintiffs, because American Express charges maintenance fees that whittle down the actual value of the Gift Cards; because the Gift Cards are not actually accepted everywhere, and because many vendors do not allow split-tender transactions, rendering a small balance left on a Gift Card worthless (and susceptible to the above-described fees).

The court denied a motion to compel arbitration in March 2008, and then stayed the case pending American Express' appeal to the Seventh Circuit.  During the pendency of the appeal, American Express and the *Kaufman* plaintiffs began settlement negotiations pursuant to the Seventh Circuit settlement conference program.  These negotiations consisted of three full-day mediation sessions, followed by two more full-day mediation sessions before the Honorable William J. Cahill (Ret.), and resulted in two

agreements: a Memorandum of Understanding executed on January 8, 2009, and a Fee Agreement, executed on February 10, 2009. At the parties' request, the Seventh Circuit granted a limited remand of this case for purposes of potential settlement, after which the *Kazemi*, *Jarratt*, *Rudd*, and *Goodman* plaintiffs were all allowed to intervene. The parties engaged in limited discovery before agreeing to further mediation. On July 20, 2009, all parties conducted a full-day mediation with the Honorable Abner J. Mikva (Ret.), resulting in a settlement agreement (the "Settlement Agreement") and subsequent modification (the "Modification"), which was signed by American Express and the *Kaufman*, *Jarratt*, and *Rudd* plaintiffs.

In the Settlement Agreement, the *Kaufman*, *Jarratt*, and *Rudd* plaintiffs seek to represent a class consisting of:

> All purchasers, recipients, holders and users of any and all gift cards issued by American Express from January 1, 2002 through the date of preliminary approval of the settlement, including, without limitation, gift cards sold at physical retail locations, via the Internet, or through mall co-branded programs. Notwithstanding the foregoing, 'Be My Guest' dining cards are not included within the settlement. [(the "Class".)]

Settlement Agreement, ¶ 3.2, at 10-11. As described within, these plaintiffs agreed in the Settlement Agreement and Modification to settle claims on behalf of the Class in exchange for a $3 million Settlement Fund, from which Class members can make claims, and a maximum of roughly $1.25 million in attorneys' fees.

On July 27, 2009, the *Kaufman* plaintiffs filed this Motion and submitted briefing in support of it, as did American Express. The *Kazemi* and *Goodman* plaintiffs each object to the Settlement Agreement, primarily alleging that the Settlement Fund is insufficient in comparison to the putative value of Class members' claims.

## II. CLASS CERTIFICATION

Before addressing the substantive provisions of the Settlement Agreement, the court must first determine whether the proposed Class can be certified. *See, e.g.*, *In re Bromine Antitrust Litig.*, 203 F.R.D. 403 (S.D. Ind. 2001).[1] For the Class to be certified, the court must find that the Class meets the requirements of Federal Rule of Civil Procedure 23(a) and (b).

### A.     Rule 23(a)

To be certified, a class must first meet Rule 23(a)'s four prerequisites:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### 1.     Numerosity

The Class includes "purchasers, recipients, holders and users" of Gift Cards from January 1, 2002 to the present. The parties have not submitted any data on how many class members there might be. However, an American Express representative acknowledged that from January 2002 through September 2008, American Expressed collected monthly service fees on over 14 million Gift Cards. Affidavit of Jerreld S. Paulson ("Paulson Aff.") ¶ 5. Of these 14 million, approximately 5 million were subject to fees after failed transactions for insufficient funds. These failures are apparently indicative of split-tender transactions. *Id.* ¶ 7. However, many Gift Card users who

---

[1]     The *Kaufman* plaintiffs put the cart before the horse, asking the court to approve the proposed settlement before asking the court to certify the Class for settlement purposes.

experienced failed transactions were later able to use their Gift Cards: only 1.7 million of the 5 million Gift Cards that experienced failed transactions plus fees were unable to subsequently complete a transaction. *Id.* ¶ 7. Even assuming the Class numbers only 1.7 million persons, the court finds that the Class is sufficiently numerous to satisfy Rule 23(a)(1).

### 2. Commonality

There are questions of fact and law common to the class. Fed. R. Civ. P. 23(a)(2). The commonality requirement does not necessitate "every class member's factual or legal situation to be a carbon copy" of those of the named plaintiffs, so the "low commonality hurdle is easily surmounted." *Wesley v. Gen. Motors Acceptance Corp.*, 1992 WL 57948, at *3 (N.D. Ill. Mar. 20, 1992). Here, American Express' policies and practices regarding the Gift Cards and questions of contract and consumer fraud law are common to the Class, satisfying the commonality requirement.

### 3. Typicality

The *Kaufman* plaintiffs' claims and defenses are typical of those of the Class. Fed. R. Civ. P. 23(a)(3). A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the same legal theory.'" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokley-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). The *Kaufman* plaintiffs each allege that they purchased Gift Cards. *See* Compl. ¶¶ 34, 57. They also allege that they attempted to use their Gift Cards as part of split-tender transactions, but were denied. *See, e.g.*, *Id.* ¶¶ 45, 46, 50, 51, 60-62. Based on these rejections, and American Express' allegedly misleading policies regarding the Gift Cards, the *Kaufman* plaintiffs assert

claims for breach of contract, fraud, and unjust enrichment. The *Kaufman* plaintiffs' claims arise from similar events and the same alleged conduct by American Express, give rise to similar claims as those of other members of the Class, and thereby satisfy the typicality requirement.

4.    Adequacy

Finally, Rule 23(a) also requires that the named plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy standard involves two elements: one relates to the adequacy of the named plaintiffs' representation of the class and requires that there be no conflict between the interests of the representative and those of the class in general; the other relates to the adequacy of class counsel's representation." *In re Bromine Antitrust Litig.*, 203 F.R.D. at 410. The *Kaufman* plaintiffs do not address the first element. The *Kazemi* plaintiffs object that the *Kaufman*, *Jarratt*, and *Rudd* plaintiffs do not adequately represent the class because the putative Class plaintiffs: (a) have not brought certain claims brought by the *Kazemi* plaintiffs arising from monthly charges on the Gift Cards, and (b) have not brought claims against Westfield America, Inc. ("Westfield"), against whom the *Kazemi* plaintiffs brought their suit. *Kazemi* Obj. 8.

American Express issues and administers the Westfield Gift Cards that were the subject of the *Kazemi* action, and imposes the monthly fees of which the *Kazemi* plaintiffs complain. The Class here encompasses the *Kazemi* plaintiffs and those similarly situated. Finally, Westfield is a signatory to the Settlement Agreement as modified, and has agreed to certain disclosures and alterations to training materials as part of the Settlement Agreement. Modification, ¶¶ 10, 11. Therefore the court finds that

the *Kazemi* plaintiffs' objections with respect to Westfield do not undermine the adequacy of the Class' representations of the *Kazemi* plaintiffs.

In support of their counsel's adequacy, the *Kaufman* plaintiffs assert that their putative class counsel, Botch & Hatch, LLC, have "extensive experience in prosecuting class actions and complex cases." Mot. 18. Counsel's qualifications as attached to the motion support this representation. *Id.* Ex. 2. Yet, the *Kazemi* plaintiffs object that a secret fee agreement between the *Kaufman* plaintiffs' counsel and American Express renders counsel inadequate. *Kazemi* Obj. 7. The *Kazemi* plaintiffs further accuse the *Jarratt* and *Rudd* plaintiffs of "climb[ing] aboard the bandwagon" of this secret agreement. *Id.* In substance, the secret agreement alleged by the *Kazemi* plaintiffs' counsel concerns the payment of the *Kazemi* plaintiffs' attorneys' fees from the overall fees paid to Class counsel under the proposed Settlement Agreement. However, arguments between plaintiffs' attorneys over fees does not render the *Kaufman* plaintiffs' counsel inadequate, and any attempt by the *Kaufman* plaintiffs to petition for attorneys' fees actually incurred by other counsel would not pass judicial review.[2]

Moreover, the *Kazemi* plaintiffs' claim that the *Kaufman* plaintiffs' attorneys are selling the Class out in favor of large attorneys' fees is belied by the fact that the settlement fund and fees were negotiated separately, and that the ratio of maximum attorneys' fees to American Express' maximum overall payment (approximately $1.25 million out of $4.25 million, or roughly 29 percent) under the Settlement Agreement is

---

[2] The *Kazemi* plaintiffs' claims of a secret agreement are particularly curious, given that the court, and not American Express or the *Kaufman* plaintiffs, awards attorneys' fees. *See* Fed. R. Civ. P. 23(h).

within the acceptable range.[3]  *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408-09 (7th Cir. 2000) (finding that district court did not abuse its discretion in awarding 25 percent as appropriate percentage-of-recovery); *see also Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745, 748-49 (7th Cir. 2006) (finding that district court did not abuse discretion in approving attorneys' fees which were 30 percent of defendant's maximum payment of $2.4 million); *see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002) (approving attorneys' fees equal to 30 percent of the total amount of the settlement).  Finally, to the extent that the *Kazemi* plaintiffs object to the substantive provisions of the Settlement Agreement, the court finds these objections relevant to approval of the Settlement Agreement, and not to the adequacy of representation under Rule 23(a)(4).

The *Goodman* plaintiffs likewise object on grounds of adequacy, asserting a conflict of interest between the *Kaufman* plaintiffs' counsel and the Class.  The *Goodman* plaintiffs assert that counsel has sold out the Class because counsel first "did nothing to improve the terms of the settlement for the class" in the six months before the mediation with Judge Mikva, and second, settled for a "nominal value."  *Goodman* Obj. 7.  Yet, the *Kaufman* plaintiffs and American Express reached their initial agreement six months before the mediation–a pre-mediation demand to return to the negotiating table, particularly during discovery, may well have proven counterproductive.  Moreover, discovery could well have revealed facts that were either neutral to the parties' claims or

---

[3]      Under the Settlement Agreement, Class counsel could recover a maximum of $1,250,500 in attorney's fees.  *See* Settlement Agreement ¶ 4.2.  Of course, in awarding any fees, the court could consider both the percentage-of-recovery method and the lodestar method.  *See Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 n.2 (7th Cir. 1995).  Nevertheless, the percentage-of-recovery analysis is relevant at this preliminary stage to the objectors' claims of selling out the class.

favorable to American Express's defense. Finally, the settlement does not appear to be so "nominal" as to render the *Kaufman* plaintiffs' counsel unfit, particularly given their demonstrated qualifications.[4]

In sum, the court finds that the *Kaufman* plaintiffs, with their chosen counsel, can fairly and adequately protect the interests of the Class.

**B.     Rule 23(b)(3)**

The Class also must satisfy one of the Rule 23(b) requirements for the court to certify it. The *Kaufman* plaintiffs urge the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A class action is superior to other methods for adjudicating issues arising from the Gift Cards: the amount-in-controversy in the *Kaufman* plaintiffs' case is too low to warrant resolution through any other form of litigation. Moreover, the common issues of law and fact, as previously discussed, predominate over questions affecting individual members. While other putative class litigation has begun, none of the intervenors here suggest that this dispute is better-resolved through individual litigation. Common questions include the legal effect to be given the restrictions disseminated with each Gift Card, the effect of any warnings regarding split-tender transactions, the effect of any warnings regarding monthly fees, and whether American Express breached its contract, committed fraud, and was unjustly enriched. Undoubtedly, there are individual questions

---

[4]     As with the *Kazemi* plaintiffs' objection to the provisions of the Settlement Agreement, the *Goodman* plaintiffs' objections are more properly and fully addressed in the analysis of the Settlement Agreement within.

as well, such as whether each Class member noticed the restrictions accompanying the Gift Cards, and whether and to what extent on each Gift Card was unjustly diminished by monthly fees. These kinds of questions are common in consumer-based class actions, however, and do not predominate here. Therefore, the court finds that common questions of fact and law predominate, and that a class action is the superior method of adjudicating this controversy.

### C.     Certification

The court finds that the Class meets the requirements of Rule 23(a) and (b), and that this case is properly brought as a class action. The court certifies the Class for settlement purposes only as:

> All purchasers, recipients, holders and users of any and all gift cards issued by American Express from January 1, 2002 through the date of preliminary approval of the settlement, including, without limitation, gift cards sold at physical retail locations, via the Internet, or through mall co-branded programs. Notwithstanding the foregoing, 'Be My Guest' dining cards are not included within the settlement.

The court further finds that the *Kaufman* plaintiffs can fairly and adequately act as Class representatives, and appoints them as such.

### III.  CLASS COUNSEL

Once it certifies class counsel, the court is required to appoint class counsel pursuant to the guidelines outlined in Rule 23(g). *See* Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g) requires that the court consider:

| | |
|---|---|
| (i) | the work counsel has done in identifying or investigating potential claims in the action; |
| (ii) | counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; |
| (iii) | counsel's knowledge of the applicable law; and |
| (iv) | the resources that counsel will commit to representing the class[.] |

*Id.* 23(g)(1)(A).  Here, the *Kaufman* plaintiffs have not asserted that their counsel satisfies any of these criteria.  Instead, the court considers the procedural history of this case and counsel's credentials, as attached to the Motion.  The firm of Bock & Hatch, LLC has represented the *Kaufman* plaintiffs since American Express's removal of this case to this court, including during settlement negotiations and limited discovery.  The court is satisfied that Bock & Hatch will continue to commit resources to representing the Class.  Bock & Hatch, particularly the named partners, appear to have extensive experience in class action litigation and settlement, and therefore also have the requisite knowledge of applicable law.  Mot. Ex. 2.  Finally, the court determines that Bock & Hatch have adequately identified potential claims in the action, both by identifying theories of liability and by identifying the *Kaufman* plaintiffs as Class members.

The court has previously addressed the *Goodman* and *Kazemi* plaintiffs' objections to Bock & Hatch, and need not repeat its analysis here.

The court appoints Bock & Hatch as lead counsel for the Class.  In their Motion, the *Kaufman* plaintiffs also seek the appointment of Morris and Associates, counsel for the *Jarratt* and *Rudd* plaintiffs, as "additional Class Counsel."  Mot. 1-2.  However, the *Kaufman* plaintiffs make no further mention of Morris and Associates, and attach no documentation in support of this requested appointment.  Without more, the court cannot satisfactorily complete its Rule 23(g) inquiry regarding Morris and Associates.  Therefore, with respect to the appointment of Morris and Associates, the Motion is denied without prejudice, and the *Kaufman*, *Rudd* and *Jarratt* plaintiffs are granted leave to file a very brief supplemental memorandum in support of the appointment of Morris and Associates.

## IV.  NOTICE

The *Kaufman* plaintiffs next seek the approval of a proposed Notice to Class members.  The *Goodman* plaintiffs object to the content of the Notice and the proposed manner of dissemination.[5]

### A.    Content

The *Kaufman* plaintiffs and American Express urge that the Notice adequately describes the Class, claims procedures, and the methods by which putative Class members can opt out of the Class.  While the court agrees generally, the Notice is inadequate because it fails to satisfy the requirements of Rule 23(c)(2)(B).  Specifically, the Notice fails to state "that a class member may enter an appearance through an attorney if the member so desires;" "that the court will exclude from the class any member who requests exclusion;" and "the binding effect of a class judgment on members . . . ."  *See* Fed. R. Civ. P. 23(c)(2)(B).  Moreover, the Notice fails to notify Class members of the scope of the claims to be released; fails to disclose "any special benefits or incentives to the class representatives;" and fails to prominently display "the address of class counsel" and identify them as such.  *See Mangone v. First USA Bank*, 206 F.R.D. 222, 232 (S.D. Ill. 2002) (quoting *Manual for Complex Litig.*, ¶ 30.212 (3rd ed. 1995)).  Finally, although the parties agree in the Settlement Agreement that Class members' objections must contain certain information, the Notice fails to inform the Class members what an objection requires.  Settlement Agreement, ¶ 7.5(c).  The court

---

[5]       The court will not consider the *Goodman* plaintiffs' unauthorized reply brief (or the substantive arguments made in American Express's Objection thereto), which was submitted nearly two weeks after the initial briefing deadline.  The *Goodman* plaintiffs filed their initial brief before the briefing deadline (thereby allowing American Express, which filed on the deadline, to respond to arguments made by the *Goodman* plaintiffs).  However, this did not warrant a second round of briefing by the *Goodman* plaintiffs, particularly without leave of court.  Therefore, the court will consider only the *Goodman* plaintiffs' arguments regarding the Notice contained in their initial briefing.

expects that an amended Notice could satisfy Rule 23 and adequately notify its readers of the claims to be released. Therefore, the parties are granted leave to file an amended Notice consistent with this opinion and the requirements of Rule 23.[6]

**B.    Manner of Dissemination**

The *Kaufman* plaintiffs and American Express likewise urge that the method of proposed publication for the Notice is sufficient. They propose first to establish an administration website, where the Notice and relevant court documents will be published, and second to publish the Notice in several regional and national newspapers.

Rule 23 requires that the court be satisfied that the Notice is the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2)(B). Here, the best notice–individual notice to each Class member–may well be impracticable or impossible, given that Gift Cards are likely given from the purchaser (about whom American Express might have data) to the end user, and given the *Kaufman* plaintiffs' and American Express's assertions in briefing that American Express preserves no purchaser-identifying information. However, the parties attach no documentary evidence attesting that purchaser- or user-identifying data was not preserved, and so the court is not in a position to determine the practicability of individual notice.

The issue of notice by publication remains. Publication of notice in a national newspaper of wide circulation, plus an online publication, constitutes sufficient notice by

---

[6]    The *Goodman* plaintiffs object for several reasons, one of which is that the typeface on the proposed Notice is too small. In support of this, they cite a New York statute which plainly applies to "any printed contract or agreement," but does not, by its terms, apply to class action notices. The *Goodman* plaintiffs' argument therefore fails.

publication.  *See Mirfasihi v. Fleet Mortgage Corp.*, 236 F.3d 781, 786 (7th Cir. 2004).

The *Goodman* plaintiffs contend that the newspaper notice is insufficient, because the settling parties have chosen the wrong newspapers.  Given the necessary amendments to the content of the Notice, and the necessary evidence (as opposed to briefing) regarding whether American Express maintains customer information in connection with its Gift Cards, the court urges the parties to consider one national publication in accordance with Seventh Circuit guidance, rather than a smattering of regional publications.[7]

## V.  CLAIMS

Additionally, the settling parties seek approval of the method and forms by which claims from the proposed settlement are made.  Attached to the Settlement Agreement are separate forms for each type of claims Class members could make from the Settlement Fund, which the Class members can submit via the Internet.  The *Goodman* plaintiffs object that the claims procedure "appears calculated to ensure that the Gift Card purchasers do not seek refunds."  *Goodman* Obj. Ex. A 8.  The court disagrees.  Class members can be required to report minimal information apprising the administrator of the validity of the Class members' claims, and the information proposed here–the Gift Card number and approximate information regarding the failed transaction or wrongful fee–is not so onerous as to impede Class members' claims.  *See In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1032 (N.D. Ill. 2000).

---

[7]    The court is concerned that the parties propose publication of the Notice in some not-so-major metropolitan areas (*e.g.*, Abilene, Texas; Jacksonville, North Carolina; and Greenville, North Carolina) while omitting other much larger metropolitan areas (*e.g.*, Orlando, Pittsburgh and Columbus), without justification.  Moreover, the court notes that parties have listed the respective circulations of *The New York Times* and *The Miami Herald* as exactly the same, which strikes the court as improbable, while listing the Chicago paper in which publication is proposed only as "Chicago."  These examples call into question the accuracy of the parties' data.

## VI.  THE PROPOSED SETTLEMENT

Next, the settling parties seek the court's preliminary approval of the Settlement Agreement.  The Seventh Circuit has described judicial review of class action settlement proposals as follows:

> District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. [Citation.] If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  Also relevant to whether a proposed settlement should be preliminarily approved is whether it "has no obvious deficiencies [and] does not improperly grant preferential treatment to class representatives or segments of the class." *In re Stock Exch. Options Trading Antitrust Litig.*, 2005 WL 1635158, at *5 (S.D.N.Y. July 8, 2005).  Consequently, the court evaluates the Settlement Agreement to determine whether it is "within the range of possible approval." *Armstrong*, 616 F.2d at 314.

### A.  Settlement Fund

The first issue is whether the $3 million Settlement Fund, from which refunds to Class members will be issued, is within the range of possible approval.  According to an American Express employee's affidavit, American Express charged over $91 million in monthly service fees. *See* Paulson Aff. ¶ 5.  However, American Express did not impose all monthly service fees after split-tender transactions.  American Express then

determined that fees assessed after a failed Gift Card transaction (some of which failed, perhaps, because of a failed split-tender transaction) amounted to roughly $19.5 million. *See id.* ¶ 6. Even this measurement, though, is not entirely accurate: some Gift Card users were able to use their Gift Cards even after a failed transaction. Therefore, the fees assessed after failed transactions, where the Gift Cards were never used again, amounted to only $9,666,788.

The *Goodman* plaintiffs maintain that the disparity between the Settlement Fund and the overall charged monthly service fees renders the Settlement Fund merely "nominal." *Goodman* Obj. 3. However, the *Goodman* plaintiffs also agree that the relevant fees were those assessed on Gift Cards that had been rejected in a split-tender transaction, rendering the Gift Cards "effectively unusable." *Id.* 1. Moreover, the *Goodman* plaintiffs ignore the factual and legal defenses that American Express has put forward, which could substantially diminish any award.

More troublingly, the *Goodman* plaintiffs point out that the Settlement Fund was agreed to before any discovery had been taken, and the amount has not changed since the close of discovery. This is disconcerting given the inherent potential for collusion in class actions.

Nevertheless, the court finds that the Settlement Fund is within the range of possible approval. Given the uncertainties of further litigation, a $3 million Settlement Fund appears to be within the range of reasonable settlements, particularly considering that the Settlement Fund does not include any attorneys' fees. Of course, the issue of the Settlement Fund and the proper valuation of the Class's claims will be the subject of any fairness hearing to be held later.

### B.    Preferential treatment to class representatives

The Settlement Agreement also grants preferential treatment to the *Kaufman*, *Jarratt*, and *Rudd* plaintiffs, awarding $2,500 to plaintiff Saul M. Kaufman, $1,000 to plaintiff Kimberly Steigh, $2,500 to plaintiff Jarratt, and $1,000 to plaintiff Rudd. While these awards are not prohibited, they are subject to heightened judicial scrutiny at this stage. *See In re Stock Exch. Options Trading Antitrust Litig.*, 2005 WL 1635158, at *5 (stating that one of the functions of the court at the preliminary approval stage is to ensure that the proposed settlement "does not improperly grant preferential treatment to class representatives or segments of the class"). In determining whether the particular plaintiffs merit such an individual award, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Neidert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Here, plaintiffs have brought suits that could lead to the recovery of small and hard-to-recover fees. Despite the value of the any settlement received, the court is unsure of the extent of the *Kaufman*, *Jarratt*, and *Rudd* plaintiffs' involvement in the litigation itself. The court is particularly doubtful that all four plaintiffs for whom awards are sought have merited such awards by their contributions to the prosecution of this case or to its resolution. After all, there is no indication that any plaintiff has even been deposed.

Moreover, these awards are disproportionate to the likely recovery of other members of the Class. The $2,500 which plaintiffs Kaufman and Jarratt request is 125 times greater than the $20 maximum that any similar Class member could recover based on one Gift Card. *See* Settlement Agreement ¶ 3.4. Even this ratio may understate the

disparity between Class members and the lead plaintiffs, as it assumes that Class members actually *could* recover the maximum amount allowed under the Settlement Agreement.  If all Class members who were unable to use their Gift Cards after failed transactions made equal claims, the recovery per Class member would be less than $2, or less than .1% of the amount which Kaufman and Jarratt request.  *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (finding a settlement "untenable" where plaintiff received $3,000 as incentive award and class members received less than $1 apiece).  While higher awards have been approved, *see, e.g.*, *Cook*, 142 F.3d at 1016, the court finds that these awards, absent some showing of meaningful contribution by the named plaintiffs, are outside the range of possible approval.  Should the parties desire to seek approval of awards for the named plaintiffs, they must make a more robust showing of plaintiffs' contributions to this case, or a request for a more modest incentive award.

## C.    Attorneys' fees

Attorneys' fees are frequently a contentious issue in class action litigation, and this case is no exception.  The Seventh Circuit has repeatedly warned courts of the built-in conflict of interest between class counsel and the class.  *See Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008) (finding "a community of interest between class counsel . . . and the defendants"); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282-83 (7th Cir. 2002) (warning of a "reverse auction" in which class counsel sells out the class in order to reach a mutually beneficial settlement with defendant).  Seizing on these warnings, the *Kazemi* and *Goodman* plaintiffs urge this court to find such a conflict here.

The Settlement Agreement allows the Class counsel to recover up to $1.25 million in attorneys' fees, while the Settlement Fund is capped at $3 million. Settlement Agreement ¶¶ 4.2, 2.10. As an initial matter, there is no indication that attorneys' fees and the settlement cap were at issue simultaneously. To the contrary, the initial settlement memorandum was signed before any agreement on fees. Moreover, as discussed above, the ratio of fees to settlement, while not dispositive, is within the generally acceptable range. Finally, the amount of fees that the Class counsel could recovery ultimately would be subject to court approval. *See* Fed. R. Civ. P. 23(h). The court finds that these fees, while high, are within the range of possible approval. Therefore, the court preliminarily approves fees here.

###### D.    Leftover funds

Finally, the parties dispute how to distribute any amount left unclaimed from the Settlement Fund. The modification to the Settlement Agreement provides that the first $200,000 of any leftover funds from the Settlement Fund will be paid to a *cy pres* fund, while the next $600,000, to the extent such funds remain, may be claimed by American Express for reimbursement of its expenses in publishing Notice to and administering the Class. Finally, any remaining funds after these initial deductions will also go to the *cy pres*.

There are two issues here: the use of the *cy pres* and American Express's reimbursement. The Seventh Circuit has stated that the use of a *cy pres* for leftover funds is "ideal for circumstances in which it is difficult or impossible to identify the persons to whom damages should be assigned or distributed." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997); *see also Mirfasihi*, 356 F.3d at 783 (finding *cy pres*

appropriate based on "the infeasibility of distributing the proceeds of the settlement . . . to class members"). Here, as discussed above, while the parties may find it difficult or impossible to identify the injured persons, the *Kaufman* plaintiffs and American Express have attached no evidence in support of their assertions that American Express does not keep identifying information regarding Gift Card purchasers or users. The court cannot therefore assume that a *cy pres* award is a proper vehicle for the distribution of any leftover funds, and correspondingly cannot determine that this proposed use of leftover funds is within the range of possible approval.

The second issue is American Express's self-reimbursement from the Settlement Fund. The Seventh Circuit criticized a settlement agreement in which the defendant was allowed to deduct settlement administration expenses, attorneys' fees, and other costs before any contribution to a *cy pres*. *Mirfasihi*, 450 F.3d at 748-49. This case is not so egregious: American Express may deduct only expenses incurred in "notice and administration;" it cannot deduct attorneys' fees, and its total reimbursement is limited to $650,000. Settlement Agreement ¶ 3.6. Nevertheless, the parties have not cited any authority permitting such reimbursement from the Settlement Fund. Moreover, the relatively high attorneys' fees, the unchanged amount of the Settlement Fund, unsupported awards to named plaintiffs, and American Express's right to reimbursement from the Settlement Fund are all common indicia of collusion between a class action defendant and the named parties. The parties may file supplemental briefing justifying such reimbursement, but it cannot be approved at this stage.

## VII.  STAY OF OTHER LITIGATION

The Motion also seeks a stay of the *Kazemi*, *Goodman*, *Jarratt*, and *Rudd* actions, all of which are pending in other courts as described in Section I above.  This court can stay the state proceedings only if "authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  *See* 28 U.S.C. § 2283.[8] The *Kaufman* plaintiffs urge that this court has authority under the Anti-Injunction Act and the All Writs Act to issue a writ "necessary or appropriate in aid of [its] jurisdiction[]."  *See id.* § 1651(a).  There is ample authority supporting the court's power to stay pending federal and state cases to effectuate class action settlement approval.  *See, e.g.*, *In re VMS Secs. Litig.*, 103 F.3d 1317, 1324 (7th Cir. 1996); *see also* Def. Br., Doc. 99, at 2-3.

Two aspects of the *Kazemi* action complicate a stay of that action.  First, the *Kazemi* plaintiffs brought their action not against American Express, but against Westfield.  However, Westfield is a signatory to the Settlement Agreement submitted to the court, and Westfield sold Gift Cards that were issued by American Express.  Thus, its conduct is at issue here.  Moreover, the *Kazemi* plaintiffs have sought and have been granted intervention in this case, and have participated in the settlement mediation with American Express and the *Kaufman*, *Jarratt*, and *Rudd* plaintiffs, rendering their conclusion that the *Kazemi* action in fact involves different parties and different claims less than credible.

---

[8]      While the *Rudd* and *Goodman* actions are pending in federal court, stays of which are not prohibited by the Anti-Injunction Act, the court otherwise applies the same analysis to determine whether an injunction of the *Rudd* proceedings are appropriate.  *See Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003) (finding that, under the All Writs Act, the court could enjoin related proceedings in other federal courts where necessary for settlement).

Second, on September 25, 2009, the *Kazemi* court certified a class of all Californians who purchased or received a Westfield Gift Card that was subject to a monthly service fee after the thirteenth month of the card's issuance. *See Kazemi* Notice, Ex. A. The *Kazemi* class is a subclass of the Class certified here. The *Kazemi* court certified its class on September 28, 2009 under the impression that "no formal settlement has been reached, signed or presented to the Kaufman court for preliminary approval." *Id.* Ex. A 3. The court finds that the All Writs Act grants it the authority to stay the *Kazemi* action, particularly given that this action was commenced first, and that the Motion was pending before any class certification ruling in the *Kazemi* action.

Finally, the fact that this court has not approved the settlement complicates the decision to enjoin any other action. District courts often issue injunctions against related state proceedings when a settlement has been at least preliminarily approved. *See, e.g.*, *Liles*, 350 F.3d at 746-47 (8th Cir. 2003); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) ("In addition, the temporary approval of the settlement stayed the state class actions."). This situation is atypical: the Class has been certified, but the Settlement Agreement has not been approved. But settlement approval is not a necessary precondition to staying parallel actions. Courts in multidistrict litigation have enjoined parallel proceedings where settlement of certain claims has not yet been approved. *See In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985). Moreover, the same concerns that justify the staying of parallel actions after approval of the settlement–assuring the integrity of the class, ensuring the enforceability of the court's orders, and protecting any settlement fund–counsel staying the parallel actions here. *See Liles*, 350 F.3d at 746-47.

The court finds that it can issue such an injunction at this stage. The deficiencies in the Notice and Settlement Agreement are relatively few, and are likely to be remedied. While the injunction is not necessary to protect an order of judgment, *see* 28 U.S.C. § 2283, it is necessary and appropriate in aid of this court's jurisdiction. *See id.* §§ 1651(a), 2283. The court therefore enjoins further proceedings in the *Kazemi*, *Goodman*, *Jarratt*, and *Rudd* actions.

## VIII. HEARING

The *Kaufman* plaintiffs have requested a final fairness hearing for approval of the Settlement Agreement. However, given the numerous outstanding issues with regard to the Notice and the substantive provisions of the Settlement Agreement, setting a final fairness hearing is premature at this point. Of course, the court will consider scheduling such a hearing (and other deadlines proposed by the *Kaufman* plaintiffs) if and when the parties remedy the issues in the Notice and the Settlement Agreement discussed above.

## IX. CONCLUSION

As described above, the court orders as follows:

1.   The nationwide Class is certified as described above;

2.   Saul M. Kaufman and Kimberly Steigh are appointed Class Representatives;

3.   The law firm of Bock & Hatch, LLC is appointed Lead Class Counsel;

4.   The proposed Notice is not approved, but the settling parties are granted leave to file a proposed amended Notice consistent with Rule 23 and this opinion;

5.   The proposed claim forms and methods are approved;

6.   The proposed Settlement Agreement is not preliminarily approved, due to insufficient justification for the incentive awards for the *Kaufman*, *Jarratt*, and *Rudd* plaintiffs, for the use of a *cy pres* fund, and for American Express's proposed reimbursement from the Settlement Fund; and

7.     The *Kazemi*, *Rudd*, *Jarratt*, and *Goodman* actions are hereby enjoined.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 22, 2009