UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAUL M. KAUFMAN and KIMBERLY STEIGH, individually and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br>  v.<br><br>AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.<br><br>                 Defendant. | Case No. 07 C 1707<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Plaintiffs (the "*Kaufman*" plaintiffs) brought this class action against defendant American Express Travel Related Services Company, Inc. ("American Express"), challenging certain fees assessed on American Express-issued gift cards. On December 23, 2009, the court issued a Memorandum Opinion and Order (Doc. 128, the "Opinion") certifying a class in this case (the "Class"), which the court defined as:

> All purchasers, recipients, holders and users of any and all gift cards issued by American Express from January 1, 2002 through the date of preliminary approval of the settlement, including, without limitation, gift cards sold at physical retail locations, via the Internet, or through mall co-branded programs. Notwithstanding the foregoing, "Be My Guest" dining cards are not included within the settlement.

(Op. 10.) The court also: (a) found that the *Kaufman* plaintiffs could fairly and adequately represent the Class (*id.*); (b) appointed the law firm of Bock & Hatch, LLC as lead counsel for the Class (*id.* 11); (c) found that the method by which Class members would make claims was acceptable (*id.* 14); (d) found the settlement fund and maximum amount of attorneys' fees to be within the range of possible approval (*id.* 15-16, 18-19); and (e) stayed four related actions.

In its Opinion, the court declined to preliminarily approve settlement. The court specifically identified the following issues that precluded preliminary approval: (1) the appointment of Morris and Associates as "additional class counsel" (Op. 11); (2) the content of any notice provided to the class (*id.* 12); (3) the method of providing any such notice (*id.* 13-14); (4) the preferential treatment provided to class representatives (*id.* 17-18); (5) the use of a *cy pres* for leftover funds from the settlement amount; and (6) American Express's right to reimbursement from any leftover settlement funds.

This matter is presently before the court on the outstanding issues outlined above, as well as additional issues raised by the parties.[1]

## I. ADDITIONAL CLASS COUNSEL

After the court's expression of concern in regard to the appointment of Morris and Associates as additional Class counsel in this matter, Stephen B. Morris submitted a declaration attesting to his qualifications. (*See* Doc. 130.) Pursuant to Federal Rule of Civil Procedure 23(g), the court can appoint class counsel after considering: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g). Morris has practiced as an attorney for over twenty years, working significantly in class action litigation for the bulk of those years. He has served as class counsel or co-class

---

[1] A preliminary note regarding the briefing in this case is necessary. Although the court set a briefing schedule regarding the issues left outstanding by the Opinion, several intervenors in this case have seen fit to file motions that did not conform to the briefing schedule. Some motions, such as the *Kazemi* intervenors' motion to lift the stay applicable to their action, were properly brought, but several others could have easily been filed as non-motion briefing, as instructed by the court. This excessive filing is unnecessary, unauthorized, and often repetitive.

counsel in twenty-five cases. Moreover, Morris represents the named plaintiffs in two of the cases related to the instant litigation. Finally, he has participated in the settlement negotiations in this case, and has secured additional relief for the Class in doing so.

However, the court declines to appoint Morris and Associates as additional Class counsel. While Morris has made contributions to the case thus far, neither Morris nor Class counsel has submitted any evidence or argument that additional Class counsel is necessary going forward, or any legal authority supporting the appointment of additional Class counsel based solely on contributions to the class to date. Without a basis for appointing additional Class counsel to settle this case, the court declines to do so.[2]

## II. NOTICE

In the Opinion, the court noted several deficiencies in the notice's content and its proposed manner of dissemination. American Express has attempted to remedy these deficiencies; the court evaluates the proposed remedies in turn.

### A. Content

The revised notice satisfies the requirements of Federal Rule of Civil Procedure 23, specifically, sections (c)(2)(B) and (e)(1) by stating: that a Class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the Class any member who requests exclusion; that a Class judgment is binding on Class members; and that a settlement is proposed. Fed. R. Civ. P. 23(c)(2)(B) & (e)(1);

---

[2] The court reiterates its concern, previously expressed in the Opinion, regarding the ratio of the maximum amount of attorneys' fees allowable under the proposed settlement, $1,275,000, to the $3,000,000 proposed Settlement Fund. *See Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 783 (7th Cir. 2004) (referring to a $2.4 million settlement fund as "meager" compared to a "handsome" $750,000 attorney's fees award). While, in the Opinion, the court found that the two figures were negotiated separately in this case, ameliorating some concerns that plaintiffs' counsel might sell out the Class for higher fees, the ratio of the two may affect the court's consideration of fairness and of the necessity of attorneys' fees incurred. *See* Fed. R. Civ. P. 23(h) (allowing the court to award reasonable attorneys' fees).

*see also* Doc. 132 Ex. A. The revised notice also discloses: what information must be included in a proper objection; the incentive payments to named Class members (an issue discussed in greater detail within); and, prominently, the name and address of Class counsel. (Doc. 132 Ex. A.)

As the Opinion required, the Notice also sets forth "the scope of the claims to be released." (Op. 12.) However, as the *Goodman* intervenors note, the description of the release contained in the notice is beyond the comprehension of the average reader. The description of the release spans nearly fifty lines of text and describes in great detail the parties discharged by the settlement and the claims settled. Although thorough, the release does not describe in plain English the claims or defendants released.

Rule 23(c)(2)(B) requires that the notice "state in plain, easily understood language" several facts about the settlement. Not included in these requirements is any information regarding a release. Despite this omission, the court concludes after reviewing the proposed description of the release, that a clear, concise summary of no more than one paragraph of the release should be included in the notice. The notice can indicate that the full release completely describes the claims released, but must include a summary that more adequately communicates to the average reader the claims released.

### B. Manner of Dissemination

The remaining questions about the notice concern how American Express proposes to notify the Class members.

#### 1. National publication

The first notice issue is the manner of notice by national publication proposed by American Express. Pursuant to the Opinion, American Express has proposed notice by

publication in *USA Today* and on the settlement administration website. The court approves this manner of notice by publication. *See Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004).[3]

### 2. Individual notice

The second notice issue is whether American Express must give individual notice to Class members. Rule 23(c)(2)(b) requires "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(b). In earlier briefing, American Express argued that this requirement was inapplicable to this case because it does not possess any customer-identifying information. However, American Express submitted no evidence regarding its possession of any such information, instead relying on unsupported assertions in briefing. In the absence of evidence, the Court declined to credit American Express's representations. (Op. 13.)

The evidence subsequently submitted by American Express reveals that it does not generally collect or maintain any customer-identifying information (*see* Doc. 136 ¶ 3), and so has no such information for the majority of its gift cards (*id.* ¶ 4). However, American Express also admits that it has (or, as discussed within, had) a limited amount of customer-identifying information, including, depending on the means by which the card was purchased, customers' names, addresses, telephone numbers, and email addresses. Moreover, American Express admits that it could link a substantial number of cards against which fees were assessed to customer-identifying information that it maintains, whether on its normal data storage or in backup. (Doc. 136 ¶ 8; *see also* Doc.

---

[3] The court has considered additional means of notice, including those proposed by the *Goodman* intervenors, and declines to require those means in addition to individual notice and notice by publication, as discussed above.

137 ¶ 3.)[4] Finally, American Express maintains that it has backed up certain deleted customer-identifying information.

The plain text of Rule 23 requires individual notice to all class members who can be identified through reasonable effort. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ("We think the import of this language is unmistakable. Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."); *cf. Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) ("When the court ordered individual notice (as well as notice by publication), it basically required defendants to do no less than that required by subsection (c)(2)" of Rule 23).

American Express asserts that accessing the individual customer information it possesses may be prohibitively expensive, making individual notification unreasonable. However, the Supreme Court has foreclosed such an argument, noting that the reasonableness requirement pertains to the effort expended to identify class members, not the cost incurred in providing such notification. *Eisen*, 417 U.S. at 176 ("There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular [parties].");[5] *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (summarizing *Eisen*, "individual notice to class members

---

[4] The exact, or even an approximate, number of cards, is uncertain. American Express has submitted affidavits that are premised on its argument that it has no duty to give individual notice to Class members whose information American Express has only on backup tapes. As explained above, that argument is poorly taken, making its affidavits less helpful.

[5] In *Eisen*, the issue of cost pertained to whether the dissemination of the notice itself was prohibitively costly to the plaintiffs, rather than whether the identification of class members was prohibitively costly to the defendants. However, the Court's statement that the cost of individual notice is not to be considered in construing Rule 23 is clear, and has been cited by subsequent courts, including the Supreme Court, in *Windsor*, cited above.

identifiable through reasonable effort is mandatory in (b)(3) actions; requirement may not be relaxed based on high cost"). While some courts have distinguished *Eisen* and found that prohibitive expense can justify a departure from the general requirement of individual notice, *see Monaco v. Carpinello*, No. CV-98-3386, 2006 WL 3422232, at *2 (E.D.N.Y. Nov. 27, 2006) (collecting cases), this court cannot do so on the present record. American Express submits no evidence of the cost of individual notice, instead maintaining that the cost is unknown and that individual notice is impossible or unnecessary. The only evidence submitted by American Express is a series of affidavits from its employees that pertain to the amount of customer-identifying information, how it is stored, and how much effort and expense retrieval of the information presented in the affidavits has cost American Express thus far. Moreover, the parties appear not to have explored this matter during discovery. The *Kaufman* plaintiffs, for their part, do not question American Express's assertions, despite the authority above.[6]

The question remains what customer-identifying information American Express still possesses. Believing that American Express had none, or very little, the *Goodman* intervenors have asserted that American Express destroyed evidence and have moved for various remedies. According to affidavits it submitted, American Express acquires a limited quantity of customer-identifying information and retains that information in two groups; American Express maintains both groups of information for a limited time before deleting the information pursuant to its regular practice. One group of customer-

---

[6] American Express and the *Kaufman* plaintiffs also argue that individual notice to gift card purchasers whose information it possesses would be ineffective to notify the end users of such cards. This argument ignores the definition of the Class, which includes both end users and purchasers of gift cards. Rule 23 compels individual notice to all Class members, including purchasers and end users, who can be identified through reasonable effort. Likewise unavailing is the assertion that notice to card holders generally will not target those customers on whose gift cards American Express assessed fees; the Class is defined as all gift card holders during the relevant period, not all gift card holders who were charged fees.

identifying information is maintained for a period of one to two years before deletion, at which point it is placed on backup tapes from which, American Express avers, the information can be retrieved. A second group of such information is maintained for three years before being placed on backup tapes for a period of fifteen days, after which it is "written over" (Doc. 178 ¶ 9), presumably meaning that it is irretrievably deleted.

Based on American Express's representations, it appears to be able to retrieve all of the information in the first group above, and an undefined amount in the second group that has not yet been written over. While American Express asserts that it has spent several hours just compiling the data it has retrieved thus far, it puts forth no evidence of what effort or expense would be required to retrieve the data necessary to given individual notice from back-up tapes. Customer-identifying information located on back-up tapes still may be accessible through "reasonable effort." Moreover, while the court's research reveals no case on point, it is unconvinced that Rule 23(c)(2)(B) allows a party to create the conditions (here, by deletion of information) that preclude identification of Class members by reasonable effort, then to claim that it cannot obtain such information.

Aside from the issue of individual notice is the issue of what sanctions, if any, the court should impose on American Express for continuing to delete its customer-identifying information in the midst of a suit in which such customers are Class members. The *Goodman* intervenors argue that American Express violated its duty to preserve evidence by irretrievably deleting some part of its customer-identifying information. Once a party has notice of litigation, it has the duty to preserve relevant evidence. *See Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). As discussed above, Rule 23 and Supreme Court interpretations thereof require notice of class

certification to all class members that are identifiable through reasonable effort. American Express knew that the *Kaufman* plaintiffs brought this action as a class action in which the putative class included all purchasers and users of American Express gift cards, at latest, when it so stated upon removing this case to federal court on March 27, 2007. (Doc. 1 ¶ 3.a.) It knew that class certification was likely, at latest, on January 8, 2009, when the parties initially agreed to settle the case.

No party suggests that the issue of American Express's maintenance of customer-identifying information previously arose in this case, whether by court order or discovery request. Indeed, it does not appear that the *Kaufman* plaintiffs ever have questioned whether individual notice was necessary. While American Express's duty arises independently of any such request or order, the remedy that the court fashions for the breach of such a duty is guided by, *inter alia*, "the level of culpability for the breach, resulting prejudice, and the ability to ameliorate any prejudice." *Haynes v. Dart*, 08 C 4834, 2010 WL 140387, at *3 (N.D. Ill. Jan. 11, 2010) (collecting cases). American Express's culpability for deleting customer-identifying information appears to be somewhat lessened in this case because no one demanded that it alter its retention policies, and the deletion of any customer-identifying information appears to have occurred pursuant to the regular operation of those policies, rather than by American Express's affirmative, mid-litigation decision to delete information. However, the court cannot reach any definite conclusions regarding American Express's culpability, or the merit of any sanctions, based on the available record.

In conclusion, Rule 23 generally requires individual notice, and the affidavits submitted by American Express clearly establish that it retains some customer-identifying

9

information that might enable it to individually notify some Class members. American Express's submitted evidence does not clearly identify what customer-identifying information is recoverable, or at what cost. The affidavits submitted include averments regarding how American Express stores and retains customer-identifying information, but the parties do not appear to have subjected these attestations to any meaningful discovery. The parties' briefs suggest that the *Kaufman* plaintiffs, while diligent in pursuit of settlement, have not litigated, or even questioned, the issue of individual notice.

On the present record, the court declines to find that individual notice is excused in this case. The amount and location of customer-identifying information might be better revealed through limited discovery, such as a deposition of a representative of American Express. After such discovery, the parties might be better-equipped to brief in greater detail the issue of individual notice. With respect to information that American Express has deleted and that is not recoverable by any means, the court may consider imposing a remedy in any findings regarding the fairness of the settlement.

### III. PREFERENTIAL TREATMENT

In its Opinion, the court rejected proposed $2,500 incentive awards to Saul M. Kaufman and Kimberly Steigh, the named plaintiffs in this action. The court found the proposed awards to be unsupported by any justification regarding the plaintiffs' expenditure of time and effort in this case and disproportionate to the amounts to be received by individual class members. The court also rejected proposed incentive awards to plaintiffs from two related actions as similarly unsupported. (Op. 17-18.)

In light of the Opinion, plaintiffs now seek $1,000 awards for Kaufman and Steigh, and no longer mention any award for the plaintiffs in the related actions.

Plaintiffs also submit statistical data showing that the size of this proposed award is modest compared to awards in other consumer class action cases. Moreover, some incentive may be necessary to induce a plaintiff to participate in a case without which the class could not proceed. *See Matter of Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). This case appears to be less valuable, on a per-consumer basis, than many consumer class actions, suggesting that a less-than-average incentive is appropriate here. Still, the court is satisfied that the revised, more modest awards are within the range of acceptable incentives to attract plaintiffs.

## IV. LEFTOVER FUNDS

In the Opinion, the court identified two issues pertaining to the proposed use of any funds that remained after claims were made.

### A. *Cy Pres*

The court previously declined to find that a *cy pres* fund was proper in this case because it was not clear that American Express could not identify persons to whom damages could be distributed. (Op. 20.) The Seventh Circuit has stated that a *cy pres* fund is "ideal for circumstances in which it is difficult or impossible to identify the persons to whom damages should be assigned or distributed." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997). As stated above, American Express maintains some customer-identifying information regarding a small percentage of the purchasers of the gift cards at issue. This information can be used to notify certain American Express gift card customers of the proposed settlement, because all customers, whether purchasers, recipients, or end users, are members of the Class. However, it is less valuable in distributing any unclaimed part of the Settlement Fund. American Express's

retained information may pertain to the purchaser, and eventual donor, of the gift card, or may pertain to the eventual user of the gift card against whom fees are assessed. In other words, direct distribution of damages to persons identifiable through American Express's records is not an effective distribution of damages to persons entitled to damages. Moreover, any such distribution would appear to exclude the majority of gift card users, who, American Express avers, are not identifiable because their cards were purchased by anonymous means. Therefore, this case is well-suited for a *cy pres* fund. *Id.*

**B.     American Express's Right to Reimbursement**

In the Opinion, the court expressed concern regarding American Express's potential reimbursement from the Settlement Fund. (Op. 20.) As previously noted, the proposed settlement allows, after claims have been paid and $200,000 has been paid into the *cy pres* fund, American Express to be reimbursed up to $650,000 for its notice and administrative expenses. The court noted that the parties had submitted no authority suggesting that such reimbursement was proper, and that the Seventh Circuit had criticized such reimbursement in other cases. *See Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745, 748-49 (7th Cir. 2006). However, as noted in the Opinion, this case is not so egregious as *Mirfasihi*, given the more limited scope of reimbursable costs and the requirement that $200,000 be paid into the *cy pres* fund first. Unlike in its previous briefing, American Express submits additional authority authorizing such reimbursement. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 230 (S.D. Ill. 2001) (collecting cases and approving reimbursement).

In the Opinion, the court also questioned whether American Express is entitled to reimbursement given the other signs of collusion with the *Kaufman* plaintiffs, including

12

the high attorneys' fees limit and the comparatively low Settlement Fund. The subsequent briefing has not allayed those concerns. In particular, as mentioned above, the *Kaufman* plaintiffs appear to acquiesce to American Express's desire not to provide individual notice to Class members. Likewise, the *Kaufman* plaintiffs do not resist American Express's request for self-reimbursement from the Settlement Fund, even though American Express puts forth no evidence of what administrative costs it anticipates, or why reimbursement of those costs is justified.

As stated in the Opinion, the court remains concerned that the *Kaufman* plaintiffs and American Express pursue settlement at the expense of the Class. The court does not quarrel with the proposition that the parties are encouraged to determine who will bear the costs of administration, *see Hickerson v. Velsicol Chem. Corp.*, 121 F.R.D. 67, 69 (N.D. Ill. 1998), but questions whether the Settlement Fund, rather than one of the parties, should bear that cost, even after Class members have made their claims. Without greater justification for reimbursement of its administrative costs, American Express's request for reimbursement from the remainder of the Settlement Fund is denied.

### V. MOTION TO MODIFY OPINION AND VACATE STAY ORDER

Finally, the *Kazemi* intervenors move this court to lift the stay on their class action, which is pending against Westfield America, Inc. ("Westfield") in state court in California, and to modify the Class definition to exclude their claims from the Class. The *Kazemi* intervenors argue that the decision of a California state court in yet another class action involving American Express, *Ilic v. Westfield Shopping Town et al.*, No. INC 035406 (Cal. Super. Ct.), estops American Express from now arguing that the Class in this case includes the *Kazemi* intervenors and their class. At issue in *Ilic* was whether

13

American Express intentionally made its computers incompatible with those of its vendors, rendering the subject gift cards worthless. (*See generally* Doc. 148-4.) The *Ilic* plaintiff also made allegations concerning her unsuccessful attempt to make a split-tender transaction (*i.e.*, a transaction with two forms of payment) by using both of her gift cards in one transaction. However, the *Ilic* complaint was not based on the plaintiff's inability to use Westfield-brand gift cards to make a split-tender transaction, but rather her inability to use Westfield-brand gift cards to make any transaction at all, due to the incompatibility of American Express's computers with those of its vendors. (*Id.*) The *Ilic* court, in declining to stay the *Kazemi* action, acknowledged this basis for the suit, stating, "Here, the allegations related to programming of computers [so as] to be incompatible with merchant computers. In the [*Kazemi*] action, in contrast, the claims relate to the imposition of monthly service charges if gift cards are not used within 12 months." (*Id.* at 5.) The *Kazemi* intervenors assert that the *Ilic* court's finding that the claims before it were distinct from those in *Kazemi* bars American Express from asserting that *Kazemi* and *Kaufman* concern the same issues, due to the involvement of split-tender transactions in this suit and in *Ilic*.

As should be clear from the court's description of *Ilic* above, the *Kazemi* intervenors' argument fails. The allegations in this case concern the assessment of fees and the disclosure of the vendors' willingness to accept split-tender transactions. The *Ilic* court found that the case before it concerned the incompatibility of American Express's computers with those of its vendors; it did not include in the summary of its case the *Ilic* plaintiff's allegation that it was unable to use her two gift cards together. Indeed, the fact that the *Ilic* plaintiff attempted to use two gift cards together was immaterial to her

14

claims; she alleged that computer incompatibility rendered each gift card unusable, whether by itself or with the other gift card. The issues raised in *Ilic* were not identical to those raised here, and the court declines to find American Express's arguments precluded.

Although the court rejects the *Kazemi* intervenors' arguments, evidence submitted by American Express counsels against the continued maintenance of the *Kazemi* intervenors' claims as part of the Class and the continued stay of the *Kazemi* action. The *Kazemi* intervenors, as previously noted, brought their class action against Westfield, and not against American Express, for fees assessed to Westfield-branded American Express gift cards. In its Opinion, the court noted that this did not appear to be a meaningful distinction, given Westfield's participation in the negotiations giving rise to the proposed settlement agreement, and given the *Kazemi* intervenors' participation in this case. (Op. 21.) However, American Express now submits evidence that it does not obtain any customer-identifying information related to its co-branded gift cards such as the Westfield gift cards. (*See* Doc. 136 ¶ 5; *see also* Doc. 178 at 4 n.3 ("American Express's gift card selling partners (i.e., malls) . . . do not provide American Express with any identifying demographic data.") This evidence demonstrates a material difference between purchasers and users of American Express-branded gift cards, such as the *Kaufman* plaintiffs, and purchasers and users of co-branded Westfield gift cards, such as the *Kazemi* intervenors: American Express retains some customer-identifying information with regard to the former group, but has none as to the latter.

This difference potentially affects individual notice to Class members who purchased their gift cards from Westfield. The court concludes that modification of the

definition of the Class in this case to exclude the *Kazemi* class and a lift on a stay of the *Kazemi* action are appropriate.

## VI. CONCLUSION

For the reasons stated above, the court: (1) approves the method of notice by publication, subject to the duty to provide individual notice; (2) preliminarily approves the incentive awards to be given to plaintiffs Kaufman and Steigh; (3) and preliminarily approves the use of a *cy pres* fund. The court declines at this stage to approve: (4) the appointment of Morris and Associates as additional Class counsel; (5) the content of the notice to be provided to class members; (6) American Express's right to reimbursement; and (7) the settlement as a whole, given issues related to individual notice discussed above. Finally, the court (8) modifies the Class definition to exclude the class previously certified in *Kazemi, et al. v. Westfield America, Inc.*, San Diego Superior Court, Case No. 37-2008-00075526-CU-BT-CTL, and (9) lifts the stay on the *Kazemi* action.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 19, 2010