# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 1707 | **DATE** | 3/1/2012 |
| **CASE TITLE** | Kaufman vs. American Express Travel Related Svcs. Co., Inc. | | |

**DOCKET ENTRY TEXT**

Final Approval Hearing Held. For the reasons stated in open court on February 29, 2012, and for the reasons stated below, the intervenors' motion to hold defendant and its lead counsel in contempt [243] is denied, Amex's motion for sanctions against the Goodman intervenors [292] is denied, and Amex's motion for a protective order [259] is denied. Counsel shall contact Rhonda Johnson, Courtroom Deputy with a few agreed upon dates for the scheduling of the depositions as indicated in open court.

■[ For further details see text below.]   Docketing to mail notices.

1:35

## STATEMENT

The Goodman and Santsche Intervenors have moved for an order holding defendant Amex and its lead counsel in contempt of court for failing to make complete disclosure of all documents and information relating to its putative spoliation of evidence which would permit the identification (and hence personal notice) of members of the plaintiff class. Intervenors' motion is based on a January 19, 2010 email from Amex in-house attorney Tom Stein to Carl Larking, prepared by Amex outside counsel JiAe Moon, stating that "[I]n connection with the defense of these actions, we need to stop purging this information from these systems if possible during the pendency of the case." Amex responds that it complied with the court's order largely based on disclosures from Chris Seibert, Amex's Director of Business Information Systems. In a February 29, 2010 affidavit, Seibert averred that approximately 99% of total Amex gift card sales "occur through totally anonymous channels" and that "no identifying demographic information for these consumers" is obtained. While customer identifying information is obtained within the context of certain databases Amex utilizes (the individual document retention policies of these databases differ), no information is "purged" in the sense of destroyed; rather, such information is downstreamed or "backed up" on an electronic data repository called the Stored Value Data Warehouse (the "SVDW"), maintained by Amex at its Information Processing Center in Glendale, Arizona. Seibert provided a declaration consistent with the above on October 14, 2010 and gave consistent deposition testimony on November 17, 2010. In his deposition, Seibert distinguished between "purge and destroy," which did not occur, and "purge and archive," which did. Moon also provided an affidavit stating that when she prepared the above-referenced email, she did not know what "purged" meant in the context of these databases. Ultimately, she avers, she learned from Seibert that "purge" in this context does not mean that the data is destroyed, but is transferred to another platform.

Evidence indicates, and Seibert confirms, that there was destruction of data with respect to something called the DDU (Direct Delivery Unit) database. Within this database, an email by Amex employee Nicole Vollmer states, "I received clarification from our technical team that the tapes are only maintained from [sic] 15 days, and then they are written over or discarded. This means it is not possible for us to obtain any data from

| STATEMENT |
|---|

prior to 3 years history for DDU." While Seibert admits that DDU data is written over, he avers that DDU data is of limited relevance here, since it relates only to non-personalized or bulk gift card orders and hence, presumably, contains little or no cardholder-identifying information. On this record, then, there is no basis for concluding that the destruction of DDU data was material to the issues involved here–identifying gift card holders.

As the record now stands, the court is unconvinced that any contempt has been committed. The motion is denied.

Amex has moved for sanctions against Intervenors for filing the above motion. Amex repeatedly asserts that it is clear that Intervenors' counsel did not read Seibert's deposition prior to filing their motion for contempt. While the court has found nothing in the evidentiary record to date to justify the contempt finding the Intervenors seek, it also finds no basis for sanctions. Intervenors are not required to accept Seibert's testimony in light of the various emails they cite, which raise questions about the truth of his testimony and whether any relevant material has been destroyed. The motion for sanctions is denied.

Finally, Amex has moved for a protective order to prevent Intervenors from deposing two of its attorneys, JiAe Moon (Stroock, Stroock and Lavan) and Tom Stein (in-house) relating to their knowledge of the above-described spoliation issue.

Intervenors correctly argue that the court ruled in January 2011 that Amex had waived its attorney-client privilege with respect to the Stein/Larking email and other spoliation-related documents due to its failure to comply with Rule 26(b)(5)(A) and provide a privilege log to support its objections to document requests served by the Goodman Intervenors in September 2010. Moreover, Amex's claim that Intervenors can get the information they seek from the Seibert deposition is just plain wrong: Intervenors are trying to impeach Seibert's testimony with the ostensibly inconsistent testimony of Moon and Stein.

While the court is skeptical of Intervenors' claim that any material quantity of customer or cardholder identifying information has been spoliated, this issue will not be put to rest simply on the basis of Seibert's denials. The court will therefore permit these depositions to go forward but because of the sensitivity of attorney depositions and the limited scope of the privilege and work product waivers the court believes occurred, the depositions will be held in open court at a time to be set by the court and the parties. The subject of these depositions will be the Moon/Stein email and that of Vollmer concerning the overwriting or other destruction of the data on the DDU tapes. The depositions will be limited to one hour each for the Intervenors' questioning.