UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAUL M. KAUFMAN and KIMBERLY STEGICH, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Joan B. Gottschall |
| AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC., | ) ) ) | Case No. 07 CV 1707 |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Saul M. Kaufman, Kimberly Stegich, Gordon Jarratt, and Amanda Rudd (the "*Kaufman*" plaintiffs) and defendant American Express Travel Related Services Company, Inc ("American Express") (together, the "Settling Parties") have moved for final approval of their Class Action Settlement ("the Settlement"). For the reasons stated below, before the court will enter an order granting final approval of the Settlement, the Settling Parties must make further efforts to notify the members of the class.

### I. BACKGROUND

This is a class action suit filed by and on behalf of purchasers and users of American Express gift cards sold in retail stores and online. The plaintiffs allege that, contrary to American Express's representations, the cards could not be used in split-tender transactions, preventing cardholders from using up the cards' full value. Any leftover value would then be consumed by monthly service charges, and ultimately revert to American Express in its entirety, unless the cardholder paid a $10 check issuance fee.

On September 21, 2011, this court issued an order granting preliminary approval of the Settlement, Order Prelim. Approving Class Action Sett. (ECF No. 315), including a plan to notify the members of the Settlement Class. The plan consisted of direct mail notice to the potential class members that the Settling Parties could identify from existing records, the establishment of a Settlement Administration web site, and notice published in one weekday edition of USA Today. *Id.* at ¶ 9. On Thursday, November 3, 2011, notice was published in that day's edition of USA Today, *see* Verification Re Pub. of Class Notice, (ECF No. 318), and 1,279,514 notice postcards were mailed to those class members whom the Settling Parties could identify from American Express's records. Decl. of Melissa D. Eisert, Mar. 29, 2012, ¶ 2 ("Eisert Decl.") (ECF No. 375). Of the postcards mailed, 110,375 were returned as undeliverable. *Id.*, Ex. A. The weekday print circulation of USA Today for the period in which notice was published was approximately 1.7 million. Audit Bureau of Circs., *The Top U.S. Newspapers for March 2012: Average Circulation at the Top 25 U.S. Daily Newspapers* (Chart), NewsBulletin Connection, (May 1, 2012, 8:11 AM), http://accessabc.wordpress.com/2012/05/01/the-top-u-s-newspapers-for-march-2012/.

Response to the notice has been very low. As of March 2, 2012, the Settlement Administrator, Rust Consulting, Inc., had received only 3,458 telephone calls and 2,514 pieces of mail pertaining to the Settlement (not counting undeliverable postcards), and the Settlement administration website had received only 17,528 unique views. Eisert Decl, Ex. A. The low response rate is echoed in the low rate of claims by class members. As of March 2, 2012, only 3,456 benefits of any kind had been requested, totaling $41,510.35. *Id.*, Ex. B. This amounts to only slightly more than one percent of the $4

million available in the Settlement Fund for class member claims (after subtracting the cost of notice, the Settlement Administrator's fee, attorney's fees, and incentive payments). *See* Joint Suppl. Mem. of Law in Supp. of Final Appr. of Class Action Sett. ("Joint Mem.") 11-13 (ECF No. 373). Although the total number of claimants appears to be unavailable, 121 claims requested multiple benefits, so there cannot be more than 3,335 claimants. *See* Eisert Decl., Ex. B. According to the June 24, 2009 Declaration of Jerreld S. Paulson, an employee of American Express, approximately 70 million Amex gift cards were purchased during the class period. Paulson Decl., ¶ 4 (ECF No. 374, Ex. 10). Of those 70 million cards, 14 million were subject to monthly fees totaling more than $91 million, and 5 million were subject to fees after failed transactions for insufficient funds, which strongly suggests the fees were charged as a result of failed split-tender transactions. Aff. of Jerreld S. Paulson, ¶¶ 5-7, Feb. 19, 2009 (ECF No. 374, Ex. 8).

## II. LEGAL STANDARD

According to Federal Rule of Civil Procedure 23(c)(2)(b), members of a class must receive "the best notice that is practicable under the circumstances." Class members are entitled to the best practicable notice, not just because the Rules require it, but "as a matter of due process." *Lemon v. Int'l Union of Operating Eng'rs, Local 139*, 216 F.3d 577, 580 (7th Cir. 2000); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

A district court has the power to issue orders requiring the parties to send notice. Fed. R. Civ. P. 23(d)(1) and 23(e)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978) ("It is clear that Rule 23(d) vests power in the district court to order one of the parties to perform the tasks necessary to send notice."). The court also has nearly complete discretion to determine the form and content of notice to class members. *Mangone v. First USA Bank*, 206 F.R.D. 222, 231 (S.D. Ill. 2001); *Reynolds v. Nat'l Football League*, 584 F.2d 280, 285 (8th Cir. 1978); *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986); 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1797.6 (3d ed. 2012).

"Because class actions are rife with potential conflicts of interest between class counsel and class members," the district court also has a special responsibility to protect the interests of class members. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). This is particularly true in the settlement phase of the case. Judges must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions. [The Seventh Circuit] and other courts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is therefore subject to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002).

### III. ANALYSIS

In the Preliminary Approval Order of September 21, 2011 (ECF No. 315), the court found the notice plan put forth in the Settlement to be adequate to provide meaningful notice to the class members who purchased or received the 70 million gift cards sold by American Express during the class period. But the abysmal response rate

4

has prompted the court to reconsider that decision. Even granted that some of the 70 million cards were bought by bulk purchasers, Eisert Decl., ¶ 2, the proportion of benefits claimed to cards sold is pitifully low. If the court were to grant final approval to the Settlement as the facts now stand, almost 99% of the Settlement Fund reserved for class member claims would go unused. Most class members would receive precisely nothing in exchange for their surrender of "any and all claims . . . related to the marketing and sale of [American Express] gift cards." Joint Mem. 13 (ECF No. 373). Those few class members who have submitted requests for benefits would receive a mere $41,510.35 in benefits in exchange for their claims while the *Kaufman* plaintiffs' attorneys would receive $1,525,000 in fees. *See* Eisert Decl. Ex. 2; Pls.' Mot. For Final Approval of Class Action Sett. 14 (ECF No. 356). This disparity is troubling and ultimately unacceptable. Because the first round of notice provided to the Settlement Class was clearly inadequate, the court has reconsidered its preliminary approval of the parties' notice plan.

Resort to notice by publication is always an implicit admission that many members of the class will never know "that their rights are before the courts," and for that reason it is disfavored. *Mullane*, 339 U.S. at 315 ("Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper . . . ."); *see also City of New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953) ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best."). Where a court has no choice but to accept that admission, it may be tempting for the parties to make "a mere gesture" toward notice, reasoning that true notice will be impossible anyway. *See Mullane*, 339 U.S. at 315. As the guardian of the due process rights of the class members, the court

must push the parties to do better. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652-53 (7th Cir. 2006). The abundance of cases requiring or approving more extensive notice plans than that called for here, even in cases with lower financial stakes or smaller Settlement Classes than in this case, reflects this compromise, and exemplifies the type of effort the court expects of the Settling Parties. *See, e.g.*, *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 1:09-cv-7670, 2011 WL 5599129, at *5 (N.D. Ill. Nov. 16, 2011) (publication in *Parade*, internet advertising providing 18 million impressions, and key word search advertisements for settlement fund of $1.575 million).[1]

The Settling Parties make reference to *Mirfasihi*, a case in which the Seventh Circuit expressed unenthusiastic approval of a notice plan consisting of a settlement administration web site similar to the one in this case and notice by publication in *USA Weekend*, a magazine insert that is included in more than 800 newspapers every weekend and has a circulation of 22.6 million.[2] 356 F.3d at 786; *USA Weekend Media Kit*, June 14, 2012, http://business.usaweekend.com/circulation. Because the class in *Mirfasihi*

---

[1] Other examples include: *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 477, 482 (E.D. Pa. 2010) (mail to 69,000 identifiable class members, three weeks of publication in *Parade*'s Midwestern editions, publication in trade journals, 773 ads on 27 cable networks, 1,212 ads on 24 television stations, and internet notice on web sites such as Google and Yahoo for class of "hundreds of thousands"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 278, 280 (W.D. Tex. 2007) (publication in national magazines and newspapers and internet advertising, at cost of $2.1 million, for class of 4.8 million); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 85, 88 (D. Mass. 2005) (947 newspapers, *Parade*, *USA Weekend*, 12 national magazines including *Newsweek, People,* and *Time,* and 25,083 radio ads on 127 stations for class of "tens if not hundreds of thousands" ); *Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 226, 229 (D.N.J 2005) (individual mail as well as publication twice in *Parade*, *USA Weekend*, *People, Time* and *Newsweek*, and once in *Fortune, Business Week,* the *Wall Street Journal* and the *New York Times* for class of nearly 3 million).

[2] The court notes that the Settling Parties' Memorandum of Law in Support of Final Approval of Class Action Settlement characterizes *USA Weekend* as "a spin-off of *USA Today*," Doc. 373, 15, perhaps attempting to give the impression that the notice preliminarily approved in this case is actually greater than that approved by the Seventh Circuit in *Mirfasihi*, 356 F.3d at 786. Given that *USA Weekend*'s circulation (22.6 million) is more than ten times larger than the circulation of *USA Today* (1.70 million), such a characterization would be unfounded.

consisted of only 1.6 million members, a fraction of the probable size of the class in this case, and because the *Mirfasihi* court described even publication in *USA Weekend* as merely "better than nothing," the court would view notice commensurate with that in *Mirfasihi* as the *bare minimum* and would approve that level of notice only if convinced that no more effective notice is practicable. *Id.* at 782, 786. The courts should not permit "better than nothing" to become the new benchmark.

Where notice to a class has been inadequate, it may be appropriate to reject the settlement in its entirety. *Girsh v. Jepson*, 521 F.2d 153, 158 (3d Cir. 1975) (rejecting class action settlement because, *inter alia*, the court was not satisfied that the best practicable notice had been provided to class members); *Greenfield v. Villager Indus.*, 483 F.2d 824, 830-31 (3d Cir. 1973) (vacating class action settlement because the form of notice by publication undertaken was insufficient). The court sees no reason to take such a drastic step at this point. Instead, the court will appoint an expert in class notification, as advised by the Federal Judicial Center's *Class Action Checklist 2010*. Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist & Plain Language Guide*, 1-2 (2010) ("In order to find the 'best practicable' notice as Rule 23 requires, your own expert report may be advisable. This is especially true in the diminished adversarial posture in which settlement places the parties."); *see also Loef v. First Am. Title Ins. Co.*, No. 2:08-cv-311, 2012 WL 640887, at *1 (D. Me. Feb. 28, 2012) ("[I]t would have been wholly insufficient for Plaintiff to propose a plan of notice by publication without including a declaration of a professional with credentials similar to Dr. Wheatman's."). After receiving the expert's report, the court will then order the Settling Parties to undertake a second round of notice, the form and content of which will be determined by

the expert's recommendations. The court proposes the appointment of Dr. Shannon R. Wheatman, Ph.D., the expert approved by the court in *Loef*, if she is available. The parties are invited to respond to this suggestion or to propose an alternate expert with similar qualifications.

The court does not believe it is necessary at this point to follow the lead of courts that have required corporate defendants to post a link to a settlement web site on their home page. *See, e.g.*, *Shurland v. Bacci Café*, 271 F.R.D. 139, 147 (N.D. Ill. 2010) (urging plaintiff to propose new notice plan including link to class notice on defendant's website); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 93 (E.D.N.Y. 2007) (requiring settling parties who wished to use an electronic means of notice to post the notice "in a conspicuous place on PayPal's web site during the entire notice period"). If the parties fail to come up with a plan that can reach a meaningful proportion of class members, the court will reconsider taking that step.

## IV. CONCLUSION

For the above reasons, the court orders the appointment of an expert in class action notification. If the parties wish to object to the appointment of Dr. Wheatman or to propose an alternate expert with similar qualifications, they must do so within 14 days.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 25, 2012